# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 96-2037

———————

Guidry Cablevision/Simul Vision   *
Cable System,   *
  *
    Plaintiff - Appellant,   *
  *   Appeal from the United States
    v.   *   District Court for the
  *   Eastern District of Missouri.
City of Ballwin,   *
  *
    Defendant - Appellee.   *

———————

Submitted:  January 13, 1997

Filed:  July 8, 1997

———————

Before LOKEN, BRIGHT, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

———————

LOKEN, Circuit Judge.

The Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521 *et seq.* (the "Cable Act"), stabilized federal regulation of the cable television industry by addressing issues that had vexed the Federal Communications Commission for many years.  One such issue is whether state and local governments may franchise federally regulated cable operators.  Congress answered with a qualified yes, allowing local governments to franchise "cable systems," but placing limits on permissible franchise terms and also defining cable systems to exclude so-called private cable systems.  The Commission in turn has invoked federal preemption to preclude local governments from requiring that an exempt private cable operator obtain a local franchise.

This case involves one type of private cable system, the satellite master antenna television system, commonly referred to as "SMATV." SMATV systems use antennae or receivers to capture over-the-air broadcast signals and satellite-transmitted signals. SMATV operators then retransmit these signals by wire to television subscribers within a single building or complex of buildings. The statutory exemption does not apply to a private cable system that "uses any public right-of-way." 47 U.S.C. § 522(7)(B). The issue before us is whether an SMATV system "uses" a public right-of-way when its cables cross under a public street. We look for guidance to the Supreme Court's recent analysis of the word "use" in a different statutory context in Bailey v. United States, 116 S. Ct. 501, 505 (1995). Although some have assumed that simply crossing a public street is use, we reach a contrary conclusion and hold that the City of Ballwin, Missouri, is preempted from requiring Guidry Cablevision/Simul Vision Cable System ("Guidry Cable") to obtain a cable franchise. Accordingly, the district court's judgment awarding the City unpaid franchise fees must be reversed.

**I.**

Seven Trails West is an apartment complex in Ballwin consisting of several commonly owned, multiple unit buildings. The complex includes Seven Trails Drive, which was dedicated as a public street in 1977. Seven Trails West owns the land under Seven Trails Drive, but the City maintains the street as a public right-of-way. In 1984, Seven Trails West contracted with Guidry Cable to build and operate an SMATV system. Because the SMATV transmission lines must cross Seven Trails Drive to serve all apartments in the complex, Guidry Cable obtained an excavation permit from the City and placed its lines some seventeen to twenty inches under Seven Trails Drive. All of the other SMATV equipment is located on

property owned by Seven Trails West. No part of the system passes over or touches the surface of Seven Trails Drive.

In June 1984, before passage of the Cable Act, the City granted Guidry Cable a cable television franchise for its SMATV system at Seven Trails West. Guidry Cable initially accepted the franchise but quit paying franchise fees in July 1986. After five years of inaction, the City revoked Guidry Cable's franchise and threatened to remove its SMATV equipment. Guidry Cable commenced this action seeking declaratory relief, and the City counterclaimed for unpaid franchise fees. After the parties submitted the case on stipulated facts, the district court entered judgment dismissing Guidry Cable's claims and awarding the City $65,214.32 on its counterclaim. Guidry Cable appeals. The parties have briefed and argued many issues, but the Cable Act preemption question is dispositive.

## II.

For many years, the F.C.C. did not regulate cable television systems. See generally Midwest Video Corp. v. FCC, 571 F.2d 1025, 1029-35 (8th Cir. 1978), aff'd, 440 U.S. 689 (1979). In the early 1970's, the Commission adopted a regime of "deliberately structured dualism," requiring cable operators to obtain federal certificates of compliance while permitting local governments (including States) to franchise cable operators consistent with minimum federal standards. Local franchising was appropriate, the Commission explained, "because cable makes use of streets and ways" and because local authorities are better able "to parcel large urban areas into cable districts" and "to follow up on service complaints." Cable Television Report & Order, 36 F.C.C.2d 143, at ¶¶ 177-78 (1972).

As the market for cable television grew and new technologies emerged, the F.C.C. exempted private cable systems such as SMATV from its cable rules, usually over the vehement protest of regulated cable operators. Along with this federal exemption, the Commission preempted local governments from franchising private cable systems. In the case of SMATV, the Commission concluded that preemption was necessary because SMATV systems are the customers of interstate satellite transmissions, and local licensing that restricts the growth of SMATV receivers would be inconsistent with the federal policy of fostering "open entry in the satellite field for the purpose of creating a more diverse and competitive telecommunications environment." In re Earth Satellite Commun., Inc., 95 F.C.C.2d 1223, 1231 (1983), aff'd sub nom. New York State Comm'n on Cable Television v. FCC, 749 F.2d 804 (D.C. Cir. 1984).[1]

The Cable Act retained this dual regulatory framework. Local governments may franchise "cable systems" consistent with federal standards regarding issues such as franchise fees, renewal procedures, and ownership restrictions. See 47 U.S.C. §§ 541-547; H.R. Rep. No. 98-934, 98th Cong., 2d Sess. 44 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4656-64. Congress enacted a private cable exemption in § 522(7)(B), commenting that this exemption is directed at SMATV systems, and left the F.C.C.'s franchising preemption decisions in place in § 541(e). See H.R. Rep. No. 98-934, 1984 U.S.C.C.A.N. at 4681, 4700. The Supreme Court rejected a due process challenge to § 522(7)(B) in FCC v. Beach Commun., Inc., 508 U.S. 307 (1993).

---

[2]See also In re Orth-O-Vision, Inc., 69 F.C.C.2d 657 (1978), recon. denied, 82 F.C.C.2d 178 (1980) (preempting franchising of MATV systems), aff'd sub nom. New York State Comm'n on Cable Television v. FCC, 669 F.2d 58 (2d Cir. 1982).

## III.

Guidry Cable argues that its SMATV system is exempt from Cable Act regulation, and therefore the City may not require a cable franchise. Section 522(7)(B) defines an exempt private system as*:*

> a facility that serves only subscribers in 1 or more multiple unit dwellings under common ownership, control, or management, unless such a facility or facilities uses any public right-of-way.

Because Seven Trails West is admittedly a commonly owned group of multiple unit dwellings, the issue is whether Guidry Cable "uses a public right-of-way" because its transmission lines cross underneath Seven Trails Drive, a public street. The Cable Act does not define the term "use," and the published committee report simply repeats the statutory language. See 1984 U.S.C.C.A.N. at 4681. In Bailey, the Supreme Court explained that "the word 'use' poses some interpretational difficulties because of the different meanings attributable to it." The word "draws meaning from its context," and a court must consider "not only the bare meaning of the word but also its placement and purpose in the statutory scheme." 116 S. Ct. at 505-06. Therefore, "use" in § 522(7)(B) must be construed in the context of the Cable Act and the F.C.C.'s prior regulation of the cable television industry.

Traditional cable systems deliver programming throughout a municipality by means of cables laid under city streets or along utility lines. They thereby make extensive use of public rights-of-way, avoiding the need to negotiate easements with countless private property owners. This is "use" consistent with the word's ordinary meaning -- "to employ, to avail oneself of, and to carry out a purpose or action by means of." Bailey, 116 S. Ct. at 506 (quotations omitted); see 43A WORDS AND PHRASES, Use; Used at 252

(West 1969).  This active interaction between cable operators and local governments is also the reason for the F.C.C.'s long-standing tolerance of local cable franchising.  "The dual federal-local jurisdictional approach to regulating cable systems is largely premised on the fact that cable systems necessarily involve extensive physical facilities and substantial construction upon and use of public rights-of-way in the communities they serve."  In re Definition of a Cable Television System, 5 F.C.C.R. 7638, 7639 (1990).

Guidry Cable's involvement with the City's public right-of-way is far less substantial.  Though Guidry Cable's system must cross Seven Trails Drive, this public street is an obstacle that must be overcome to serve the entire, commonly owned Seven Trails complex, not an asset in serving a myriad of independent subscribers.  The City has provided no service or benefit to Guidry Cable's system, and Guidry Cable paid for the initial cost and disruption of crossing under the City's street when it obtained an excavation permit.  Thus, in the most practical sense, Guidry Cable has not "used" the City's public right-of-way.[2]

Other reasons why the F.C.C. has supported local franchising of federally regulated cable operators also do not apply to Guidry Cable's SMATV system at Seven Trails West.  Local governments are better able "to parcel large urban areas into cable districts," 36

---

[2]It also seems significant that Seven Trails West, not the City, owns the land underlying Seven Trails Drive.  However, we doubt whether the extent of federal regulatory preemption should depend upon who owns the land beneath a public right-of-way.  If federal telecommunications law preempts the City from requiring a cable franchise, that does not affect its authority to otherwise regulate use of land beneath a public street.  In general, non-disruptive uses by abutting property owners are permitted.  See McQuillin, MUNICIPAL CORPORATIONS § 30.85 (3d ed. 1990).

F.C.C.2d at ¶ 177, but districting is not necessary when the boundaries of a commonly owned apartment complex define the SMATV system. Franchising regulation also protects individual consumers from the market power a traditional cable operator may enjoy once its system is installed, whereas an apartment complex owner has countervailing bargaining power because it represents numerous potential subscribers.

In In re Definition of a Cable Television Sys., 5 F.C.C.R. 7638 (1990), the F.C.C. considered whether MATV and SMATV systems "use" a public right-of-way if they transmit signals *over* a public street by radio or infrared transmission. The Commission concluded that this would not deprive a system of the § 522(7)(B) exemption:

> Congress did not intend to include within the meaning of the term "use" of a public right-of-way the mere passing over of such a right-of-way by electromagnetic radiation. . . . [R]adio waves may cross a public right-of-way but do not use it.

5 F.C.C.R. at 7642. Thus, the Commission has expressly recognized that crossing is distinct from using. Of course, crossing a public street by burying cables underneath it is a more physical interaction with city property than crossing over the street with infrared transmissions. That may be why the Commission's Report and Order did not address whether crossing a public right-of-way by buried cable is "use" for purposes of § 522(7)(B). We conclude that both forms of crossing are not "use," either in the natural meaning of that word, or by applying the contextual analysis mandated in Bailey. Accordingly, we disagree with the contrary dicta in two district court decisions. See Liberty Cable Co. v. City of New York, 893 F. Supp. 191, 195 (S.D.N.Y.), aff'd, 60 F.3d 961 (2d Cir. 1995), cert. denied, 116 S. Ct. 1262 (1996); Channel

<u>One Systems, Inc. v. Connecticut Dep't of Pub. Util. Control</u>, 639 F. Supp. 188, 199 (D. Conn. 1986).

Through its private cable preemption decisions, the F.C.C. has adopted a policy of allowing competition to regulate the development of SMATV so as to encourage the development of satellite transmission of television programming. Congress in the Cable Act endorsed this policy. In § 522(7)(B), it defined the cable systems entitled to a private system exemption from federal regulation, and in § 541(e), it left the Commission free to develop an appropriate preemption policy for exempt facilities. We are unwilling to thwart this policy by broadly and unrealistically construing the word "use" in the exception to the statutory exemption, thereby reducing the competitive role of SMATV and other emerging delivery systems in these fast-changing telecommunications markets. As Justice Stevens observed in his concurring opinion in <u>Beach Communications</u>, 508 U.S. at 320, "Regulation is sometimes necessary, but it is always burdensome. A decision *not to regulate* the way in which an owner chooses to enjoy the benefits of an improvement to his own property is adequately justified by a presumption in favor of freedom."

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent. I believe that Guidry Cable <u>used</u> the public right-of-way by digging under the street to lay its cable.

When a "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's

answer is based on a permissible construction of the statute." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984). In applying that standard, the FCC's interpretation of the Cable Act and what constitutes "use of a public right-of-way" is entitled to "considerable weight" and this court's deference. See id. at 844.

The FCC interpreted the Cable Act and addressed what constitutes a cable system under the Act in In re Definition of a Cable Television System, 5 F.C.C.R. 7638 (1990). The FCC stated that Congress never intended the Cable Act to include systems that transmit their signals through radio waves instead of through physical cables or wires. Id. at 7639. The FCC's discussion relies extensively on the notion that radio transmissions fall outside the scope and ordinary meaning of "cable." See generally id. The FCC described the difference between services using radio waves and wires or cables as a "sharp contrast." Id.

Nevertheless, the majority in this case relies on the FCC's comment that "'radio waves may cross a public right-of-way but do not use it,'" to conclude that the FCC distinguished between "crossing" and "using" for purposes of laying cable underneath a public street. Maj. Op. at 7 (quoting In re Definition of a Cable Television System, 5 F.C.C.R. at 7642). To the contrary, the FCC stated that if a facility employing "closed transmission paths," such as cable instead of radio waves, "cross[es] a public right-of-way, it will be considered a cable system for purposes of the Cable Act . . ." and, therefore, subject to local regulation. In re Definition of a Cable Television System, 5 F.C.C.R. at 7642. The FCC made repeated references to "crossing a public right-of-way" when explaining which systems fall outside the scope of the Cable Act's private cable system exemption. See, e.g., id. at 7641 ("'the exception is not available unless . . . there is no crossing

of a public right-of-way . . . .'" (internal citation omitted)). Furthermore, parties brought the issue whether "use" and "cross" are synonymous to the attention of the FCC and it regarded them as interchangeable:

> We . . . sought comment in the *Notice* "with respect to the question of what constitutes a crossing of a public right-of-way, . . . ." As noted by several parties, the specific statutory language refers to "uses" of a public right-of-way and our use of the term "crossing" was not meant to imply anything different.

Id. at 7641-42.

Other court decisions demonstrate that the FCC's interpretation of "use" as synonymous with "cross" is a permissible construction of the statute. Most notably, the Supreme Court described the FCC's conclusion that a video system "is subject to the franchise requirement if its transmission lines . . . **use or cross** any public right-of-way" as "[c]onsistent with the plain terms of the statutory exemption." F.C.C. v. Beach Communications, Inc., 113 S. Ct. 2096, 2100 (1993) (emphasis added). Likewise, two district courts stated that crossing a public right-of-way constitutes use. See Liberty Cable Co. v. City of New York, 893 F. Supp. 191, 195 (S.D.N.Y.), aff'd, 60 F.3d 961 (2d Cir. 1995), cert. denied, 116 S. Ct. 1262 (1996); Channel One Systems, Inc. v. Connecticut Dep't of Pub. Util. Control, 639 F. Supp. 188, 199 (D. Conn. 1986) ("a person providing cable television service using public rights-of-way by cables crossing under a public road . . . is a cable operator and must obtain a franchise."). The majority dismisses the aforementioned authority summarily despite acknowledging that cable crossing underneath a public street "is a . . . physical interaction with city property." Maj. Op. at 7.

Instead, the majority relies on the Supreme Court's interpretation of "use" in a criminal statute. See id. (relying on Bailey v. United States, 116 S. Ct. 501, 505 (1995)). I believe a criminal case stating that a person is not "using" a gun locked in the trunk of a car, is clearly distinguishable from a civil case

deciding whether a company is "using" a public street by crossing underneath it with a cable to reach more customers.

In addition, the majority regards the public street as "an obstacle that [Guidry Cable] must overcome to serve the entire . . . complex" rather than "an asset in serving a myriad of independent subscribers." Maj. Op. at 6. The majority neglects to consider, however, **how** Guidry Cable chose to overcome this "obstacle." According to the FCC, a "sharp contrast" exists between facilities employing radio waves and those employing physical cable. In re Definition of a Cable Television System, 5 F.C.C.R. at 7639. By exempting facilities utilizing radio waves from local regulation, Congress provided an incentive to such facilities over facilities employing physical cables and wires.

Thus, Guidry Cable could have avoided "physical interaction" with city property, and thereby the franchise fees, by employing radio waves instead of physical cable to cross the city's street. Guidry Cable instead chose to rely on cable, thereby requiring an excavation permit from the city and subjecting itself to the city's franchise fees. The majority's opinion, however, undermines the Cable Act's preference for facilities employing radio waves rather than physical cables, allows Guidry Cable to escape part of its obligation in return for the excavation permit and denies the local government the ability to regulate industries which cross public rights-of-way.

I believe the FCC provided a reasonable and usual construction of the term "use." Accordingly, I would affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-