**WH LINK, LLC, Relator,**

v.

**CITY OF OTSEGO, Respondent.**

No. C7–02–2062.

Court of Appeals of Minnesota.

July 1, 2003.

Mark J. Ayotte, Philip R. Schenkenberg, Briggs and Morgan, P.A., St. Paul, for relator.

James J. Thomson, Robert J.V. Vose, Kennedy & Graven, Chartered, Minneapolis, for respondent.

Kathleen A. Marron, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, for amicus curiae, Minnesota Cable Communication Association.

Gary A. Van Cleve, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington; and Paul Glist (pro hac vice), Cole Raywid & Braverman, L.L.P., Washington, DC, for amicus curiae, Charter Communications, Inc.

Susan L. Naughton, League of Minnesota Cities, St. Paul, for amicus curiae, League of Minnesota Cities.

Considered and decided by LANSING, Presiding Judge, PETERSON, Judge, and WRIGHT, Judge.

## OPINION

LANSING, Judge.

This appeal involves a dispute between a city and a telecommunications carrier over whether the carrier must comply with state-law requirements governing cable-television systems in order to provide video programming to its local telephone customers over an open-video system. The city approved the carrier's application for a cable franchise, conditioned on the carrier's acceptance of a service-area requirement under the "level playing field" provision of the Minnesota cable statute. Believing that condition to be illegal as applied to its proposed open-video system, the carrier appealed to this court for certiorari review of the city's decision. Because we conclude that the challenged

state-law requirements apply to the carrier's open-video system, we affirm.

## FACTS

In 2000, WH Link, LLC, (WHL) received authorization from the Minnesota Public Utilities Commission to provide local telephone service in areas including the City of Otsego. With that authorization, and in compliance with the city's right-of-way ordinance, WHL installed network facilities and began providing local telephone and Internet services within the city. The network, constructed with copper and fiber optic wire, has the capacity simultaneously to carry telephone, Internet, and video signals.

In order to add video programming to its services, WHL filed an application in April 2001 with the Federal Communications Commission (FCC) for certification to operate an open-video system (OVS). After the FCC approved the application, WHL filed with the FCC a notice of intent to establish an OVS in Otsego and several other communities. At that time, Charter Communications Holding Co., LLC, (Charter) provided cable television service in the city under an extension permit.

After filing its notice of intent, WHL met with city officials to discuss WHL's plan to begin providing video programming in the city. The city took the position that WHL would have to obtain a cable franchise to provide OVS service. WHL disagreed, contending that the state-law franchise requirement was preempted by federal laws establishing the OVS regulatory framework. In December 2001, after no resolution had been reached, WHL informed the city that it would begin providing video programming in compliance with federal law over its OVS system in January 2002. After further negotiations, WHL agreed to apply for a cable franchise under state law, subject to a reservation of

its "rights under applicable law." In its franchise application, WHL asserted that it was exempt from state-law service-area requirements and affirmed that it sought "authorization to provide cable services over its open video system in its federal 'telephone service area,' without being obligated to go beyond that service area through the imposition of any specific build-out or line-extension obligations."

The city initiated the statutory cable franchising application process in March 2002, and both WHL and Charter applied for franchises. (Charter's extension permit was to expire at the end of 2002.) Charter proposed a service area comprising all incorporated areas of the city with a density of nine homes per quarter mile. WHL proposed initially to serve a smaller area of the city—five residential subdivisions in which it was already providing local telephone and Internet service—but indicated it would continue to expand its network so that its video service would be available to more city residents in the future.

After holding a public hearing and considering written comments of the applicants, in October 2002 the Otsego City Council adopted resolutions approving Charter's franchise application and conditionally approving WHL's application, subject to WHL's acceptance of a service-area requirement. Specifically, the city's draft franchise ordinance required WHL to extend its OVS service within seven years to all areas of the city with a dwelling density of nine homes per quarter mile. WHL rejected the service-area requirement and informed the city that it viewed the imposition of the requirement as effectively denying its franchise application. This appeal followed.

## ISSUES

I. Does the cable-franchise requirement of Minn.Stat. § 238.08 (2002) apply to

an open-video system operated by a local exchange carrier?

II. Does federal law preempt the application of a cable-franchise requirement to an open-video system or the imposition of a service-area requirement on an open-video system?

## ANALYSIS

 Decisions of administrative agencies, including cities, are presumed correct, and we will reverse or modify an agency decision only if it prejudiced a party's substantial rights because it exceeded the agency's statutory authority, was made upon unlawful procedure, was affected by other error of law, or was arbitrary or capricious. *See* Minn.Stat. § 14.69 (2002) (defining scope of judicial review of agency decisions). In considering questions of law, "reviewing courts are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989) (citations omitted). Statutory construction is a question of law subject to de novo review. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

### I

 WHL contends that the city erred in requiring it to obtain a cable franchise to operate an open-video system. Cable communications in Minnesota are governed by chapter 238 of the Minnesota Statutes. Section 238.08 states that "[a] municipality shall require a franchise

* * * of any cable communications system providing service within the municipality." Minn.Stat. § 238.08, subd. 1(a) (2002). The statute defines a "cable communications system" as

a system which operates the service of receiving and amplifying programs broadcast by * * * television or radio stations and other programs originated by a cable communications company or by another party, and distributing those programs by wire, cable, microwave or other means * * * to persons who subscribe to the service.

Minn.Stat. § 238.02, subd. 3 (2002).

 WHL does not argue that an open-video system is not a "cable communications system" for the purposes of the cable-franchise requirement. Rather, it contends that the legislature excluded cable services provided by telecommunications carriers from the franchise requirement when it adopted certain legislative amendments in 1997.[1] That year the legislature amended chapter 237, which regulates telephone, telegraph, and telecommunications operations, to add provisions governing the use and regulation of public rights-of-way. *See* 1997 Minn. Laws ch. 123, §§ 3–4. One of the new provisions prohibits local governments from "requir[ing] a telecommunications right-of-way user to obtain a franchise or pay for the use of the right-of-way." *Id.* at § 4 (now codified at Minn.Stat. § 237.163, subd. 7(a)(4) (2002)). WHL contends that because it is a telecommunications carrier that uses the right-of-way, section 237.163 prohibits the

---

1. The city argues that WHL may not raise this argument on appeal because it was not presented in proceedings before the city council. This court generally does not consider issues not raised and decided in the originating forum. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). But the record in this case indicates that WHL did raise the issue in the council proceeding. A summary of WHL's arguments prepared for the city by its outside counsel indicates that WHL contested the city's authority to require that a telecommunications carrier obtain a franchise as a condition of using the right-of-way to provide OVS service. We therefore consider the merits of WHL's argument.

city from requiring it to obtain a franchise for its OVS operation under chapter 238. WHL overlooks, however, that "telecommunications right-of-way user" is a term of art, which is defined by statute to *exclude* "cable communication systems":

> 'Telecommunications right-of-way user' means a person owning or controlling a facility in the public right-of-way * * * that is used or is intended to be used for transporting communications or other voice or data information. *A cable communication system defined and regulated under chapter 238 * * * [is] not [a] telecommunications right-of-way user[ ] for the purposes of * * * section 237.163.*

Minn.Stat. § 237.162, subd. 4 (2002) (emphasis added). Therefore, if WHL's open-video system is a "cable communications system" under chapter 238, section 237.163, subd. 7(a)(4), would have no effect on the city's obligation to require it to obtain a franchise under chapter 238.

According to WHL's franchise application, its open-video system would receive television and other video programming by satellite, and would distribute programs by copper and fiber-optic wire to residential subscribers. Because such a system satisfies the statutory definition of "cable communications system" set out in section 238.03, and because a "cable communications system" is not a "telecommunications right-of-way user" exempted from the municipal right-of-way franchise authority, we conclude that the city did not err in requiring WHL to obtain a cable franchise for its open-video system.

## II

WHL argues that federal law preempts both the application of the chapter 238 cable-franchise requirement to an open-video system and the city's imposition of a service-area requirement on WHL's proposed OVS operation.

The city contends that this court does not have jurisdiction to decide WHL's preemption claims because the claims amount to a collateral attack on two final FCC orders, over which federal appellate courts have exclusive jurisdiction. The first of the orders referred to by the city is an FCC order amending its OVS rules; the second is the FCC's certification of WHL as an OVS operator. We reject the city's jurisdictional challenge. While exclusive jurisdiction "to enjoin, set aside, suspend * * * or to determine the validity of" an FCC order adopting a rule lies in the federal appeals courts, 28 U.S.C. § 2342(1) (2002), this certiorari action does not seek to enjoin, set aside, suspend or determine the validity of any FCC rule. Similarly, although federal law also requires challenges to FCC licensing decisions to be brought in the United States Court of Appeals for the District of Columbia Circuit, 47 U.S.C. § 402(b) (2002), WHL does not ask this court to invalidate the FCC's order on its OVS application—an order in which the FCC *granted* WHL's application.

The question presented by WHL's preemption argument is whether Congress preempted local cable-franchising requirements as applied to open-video-system operators when it adopted federal legislation governing cable communications. This is not a question Congress directed to the FCC, nor does the question require interpretation of any FCC rule or regulation. This court accordingly has jurisdiction to decide the preemption issues. *Consol. Tel. Co-op. v. W. Wireless Corp.*, 637 N.W.2d 699, 709 (N.D.2001) (stating that state courts have concurrent jurisdiction to determine preemption questions arising under the communications act).

## A

■ In its first preemption argument, WHL contends that the Minnesota cable-franchise requirement conflicts with federal law as applied to an open-video system and is therefore preempted. Conflict preemption arises when "state law *conflicts* with federal law, either because compliance with both federal and state law is impossible or because the state law is an obstacle to the accomplishment of the purposes of the federal scheme." *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 11 (Minn.2002). The preemptive effect of a statute involves a question of law, which this court reviews de novo. *Id.* at 9.

■ The first step in a conflict-preemption analysis is to determine whether in fact the challenged state law conflicts with federal law. *See Martin*, 642 N.W.2d at 8–10 (considering whether state law conflicts with federal law before determining preemptive effect). Federal law generally bars the provision of "cable service" without a franchise. 47 U.S.C. § 541(b)(1) (2002). When Congress adopted legislation in 1996 permitting common carriers to enter the cable-television market by delivering video programming through open-video systems, it also amended the statutory definition of "cable service" to exclude open-video systems. Telecommunications Act of 1996, Pub.L. No. 104–104, §§ 301(a), 302(b)(2), 110 Stat. 56, 114, 124 (1996). WHL argues that Congress's exclusion of open-video systems from the definition of "cable system" operates to bar state and local governmental units from requiring OVS operators to obtain a cable franchise.

The effect of the 1996 amendments on state franchising of open-video systems was addressed by the United States Court of Appeals for the Fifth Circuit in *City of Dallas v. FCC*, 165 F.3d 341 (5th Cir.1999). In *City of Dallas*, the court determined that the franchising requirement from which OVS systems were exempted by operation of the 1996 amendments was the *federal* requirement that a cable operator obtain a franchise. *Id.* at 347. Eliminating that requirement, the court explained, "does not eviscerate the *ability* of local authorities to impose franchise requirements, but only their *obligation* to do so." *Id.* In reaching its decision, the court squarely rejected the FCC's contention that local franchising authority is a creation of federal law. *Id.* at 348.

WHL argues that we are bound to follow an earlier ruling of the Eighth Circuit which, according to WHL, limits local cable franchising authority to "cable systems" as defined under federal law. In *Guidry Cablevision/Simul Vision Cable Sys. v. City of Ballwin*, 117 F.3d 383 (8th Cir.1997), the owner of a satellite master antennae system (SMATV) challenged a city's franchising requirement as applied to a closed cable system which provided service to two apartment buildings. *Id.* at 384. The SMATV operator argued that federal law exempted its system from federal cable regulation and that the city therefore could not demand that it obtain a cable franchise. *Id.* at 385. At issue was the meaning of 47 U.S.C. § 522(7)(B) (2002), which excluded from the definition of "cable system" any "facility that serves subscribers without using any public right-of-way." *Id.* The SMATV operator argued that the mere fact that its cables crossed under a single public street was insufficient to establish "use" of the right-of-way. *Id.* The court agreed and concluded that because the SMATV system did not "use" the right-of-way, the city had no authority to impose a franchise requirement. *Id.* at 386.

WHL contends that because section 522(7) also excludes open-video systems from the definition of "cable system," under *Guidry* the city's franchise require-

ment is preempted as applied to an open-video system. This argument is unpersuasive. First, *Guidry* did not squarely decide the question of whether local franchising authority is limited to "cable systems" as defined under federal law. The issue in *Guidry* was whether the SMATV qualified for what the court labeled the "private cable exemption" established in section 522(7)(B). *Id.* at 385. Second, irrespective of factual differences distinguishing this case from *Guidry*, WHL's argument rests on faulty logic. The argument assumes that because private cable systems are excluded from the definition of "cable system" and are also exempt from local franchising requirements under *Guidry*, any other system excluded from the definition of "cable system" must also be exempt from local franchising under *Guidry*. The *Guidry* court's ruling as to the scope of franchising authority over private cable systems such as SMATV systems simply does not support WHL's argument.

Because the Minnesota cable-franchise requirement as applied to open-video systems does not conflict with federal law, it presents no issue of preemption for us to decide.

**B**

■ WHL also argues that the city's service-area requirement conflicts with federal law and is therefore preempted. In the proposed ordinance granting WHL a cable franchise, the city required WHL, as a condition of the franchise, to offer cable service in areas of the city outside the area of its telephone service. This requirement is consistent with the Minnesota "level playing field" statute, which states:

> No municipality shall grant an additional franchise for cable service for an area included in an existing franchise on terms and conditions more favorable or

less burdensome than those in the existing franchise pertaining to: (1) the area served * * *.

Minn.Stat. § 238.08, subd. 1(b) (2002). According to WHL, the service-area requirement is inconsistent with 47 U.S.C. § 573(a)(1) (2002). That statute establishes that

> [a] local exchange carrier may provide cable service to its cable service subscribers in its telephone service area through an open video system that complies with this section.

WHL contends that by authorizing a local exchange carrier to provide OVS service "in its telephone service area," Congress simultaneously exempted such carriers from service-area requirements that would oblige the carrier to provide video service beyond the limits of the telephone service area.

WHL's argument fails to present any conflict between the relevant state and federal statutes. The federal statute permits WHL to enter the cable market by offering open-video service in its telephone service area while the state statute requires the city, when franchising WHL to provide that service, to do so on terms similar to those included in pre-existing franchises. Despite its claim that the city "creat[ed] and impose[d] its own build-out and service-area requirement *that is different from that established by federal law*" (emphasis added), WHL points to no federal law regulating (or prohibiting) service-area or build-out requirements.

WHL argues that permitting a municipality to impose a service-area requirement on an OVS operator would "render meaningless the FCC's OVS certification." But the federal OVS statutes indicate that the certification process serves to determine compliance with FCC regulations governing open-video systems, not to create an enforceable right to operate such a

system free from state or local regulation. *See* 47 U.S.C. § 573(a)(1).

In the absence of any demonstrated conflict between the state and federal statutes, we conclude that the service-area requirement imposed by the city is not preempted by federal law.

## DECISION

An open-video system is a "cable communications system" as defined by Minn. Stat. § 238.02, subd. 3 (2002), and is therefore subject to the cable-franchise requirement under Minn.Stat. § 238.03 (2002). As a "cable communications system," an open-video system is not a "telecommunications right-of-way user" exempt from the municipal right-of-way franchise authority under Minn.Stat. § 237.163, subd. 7(a)(4) (2002). Finally, neither the state-law cable-franchise requirement nor application of a service-area requirement to an open-video system conflicts with federal law. Accordingly, we affirm the city's decisions to require WH Link to obtain a cable franchise and to impose a service-area requirement as a condition of that franchise.

**Affirmed.**