PER CURIAM.
 

 In 1994 one Brian Gillson owned a property in Middleton, Rhode Island, subject to a bank mortgage. At this time, Gillson — who had earlier filed for chapter 11 bankruptcy— was subject to a reorganization plan confirmed in 1992 by the U.S. Bankruptcy Court for the District of Rhode Island. The order confirming the plan provided that failure by Gillson to make payments pursuant to the mortgage, note, or other loan documents would trigger the default provisions in the documents, and the bank “retained its rights and remedies” provided in those documents. The bankruptcy court also explicitly retained jurisdiction over the proceedings.
 

 In September 1994, ALI, Inc., acquired the bank mortgage and, when Gillson failed to make his mortgage payments, began proceedings to foreclose on the mortgage. Gill-son then brought an action in Rhode Island state court seeking a delay, and in April 1995, a state court stayed the foreclosure for about a month on the condition that Gillson execute a deed of his property in favor of a subsidiary of ALI — the deed to be held in escrow and recorded only if Gillson failed to sell the property by May 16,1995.
 

 Gillson failed to sell the property and on May 17, 1995, the deed for the mortgaged property in favor of ALI’s subsidiary was conveyed to the subsidiary and was recorded under Rhode Island law. The subsidiary now held the title to the property subject to the original mortgage. ALI held the mortgage, and Gillson had -no interest in the property, having transferred his interest to ALI’s subsidiary.
 

 Under the mortgage, ALI conducted a foreclosure sale of the property in October 1995, and Jonco, LLC, was the highest bidder. Jonco paid ALI a non-refundable deposit of $100,000 and entered into a memorandum of sale providing for closing in 30 days, specifically, on November 9,1995. The memorandum provided that time was of the essence. Thereafter, on October 26, 1995, the bankruptcy court entered an order converting Gillson’s reorganization proceeding to one under chapter 7.
 

 On November 9, 1995, the day the closing was scheduled to take place, Jonco sought a postponement, asserting that Gillson’s chapter 7 bankruptcy had triggered the automatic stay restricting transfer of estate property. 11 U.S.C. § 362(c). In seeking the delay, Jonco may have been prompted by difficulties of its own in obtaining financing, but its motive matters not. ALI responded by pointing out that Gillson had no interest in the property after May 1995 and therefore any automatic stay was irrelevant.
 

 Jonco nevertheless declined to complete the sale and thereafter, brought suit against ALI and its subsidiary, arguing that ALI lacked marketable title on November 9,1995. Jonco asked either for a return of its deposit or for conveyance of the property. ALI and its subsidiary moved for summary judgment, the magistrate judge so recommended, and in January 1996 the district court adopted the magistrate judge’s findings and recommendations in a two-sentence order dismissing Jonco’s case.
 

 On this appeal, Jonco’s only remotely serious argument is that ALI lacked marketable title on November 9, 1995. Jonco says that Gillson’s transfer of his title to ALI’s subsidiary in May 1995, pursuant to the state court proceeding that delayed the foreclosure, was invalid because no one had obtained the prior approval of the-bankruptcy court, which had kept jurisdiction over Gill-son’s chapter 11 reorganization. According to Jonco, Gillson therefore retained his interest in the property despite the recorded deed
 
 *35
 
 to the ALI subsidiary, and the' property therefore became subject to the automatic stay in October 1995.
 

 The bankruptcy court did retain jurisdiction after the chapter 11 reorganization plan was confirmed in 1992 in order to implement the plan and resolve specified open issues. But the plan itself explicitly permitted the mortgage holder to pursue its remedies for default if Gillson failed to make payment on the mortgage; and nothing in the plan prevented the mortgagee from utilizing state court proceedings, or required any further approval by the bankruptcy court in the event of a default.
 

 Directly on point is
 
 In re Ernst, 45
 
 B.R. 700 (Bankr.D.Minn.1985), relied upon by the magistrate judge. There, the court observed:
 

 Unless the matter at issue is within the exclusive jurisdiction of the Bankruptcy Court, the mere reservation of jurisdiction in the ease by the Bankruptcy Court post-confirmation does not foreclose the right of a party to seek his remedy upon default under the plan in a state court having jurisdiction over the subject matter of the dispute.
 

 Id.
 
 at 702;
 
 see also In re Timber Tracts, Inc.,
 
 70 B.R. 773, 778 (Bankr.D.Mont.1987). This is not a case in which the bankruptcy court expressly sought to reserve exclusive jurisdiction over the matter.
 
 Compare In re 12th & N Joint Venture,
 
 63 B.R. 36 (Bankr.D.D.C.1986).
 

 Jonco’s remaining arguments are without substance. Neither in the district court nor in this court has it shown that there was any material fact precluding summary judgment or that further discovery was likely to unearth pertinent evidence. And while the district court was required to review the magistrate judge’s decision
 
 de novo,
 
 28 U.S.C. § 636(b)(1)(C), this did not — contrary to Jonco’s contention — compel the district court to make separate findings of fact or issue an opinion setting forth its own reasoning,
 
 see Elmendorf Grafico, Inc. v. D.S. America (East), Inc.,
 
 48 F.3d 46, 49-50 (1st Cir.1995).
 

 Affirmed.