**UNITED STATES, Appellee,**

v.

**Robert L. CORAINE, Defendant, Appellant.**

No. 99–1548.

United States Court of Appeals, First Circuit.

Heard Nov. 2, 1999.

Decided Dec. 23, 1999.

Bjorn R. Lange, Assistant Federal Public Defender, Federal Defender Office, for appellant.

Jean B. Weld, Assistant United States Attorney, with whom Mark E. Howard, Assistant United States Attorney, and Paul M. Gagnon, United States Attorney, were on brief for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Robert Coraine challenges the validity of the search that led to his conviction as a felon in possession of a firearm. For the following reasons, we affirm.

## I.

### Background

The facts of this case are not seriously disputed. On November 7, 1997, an undercover investigation by several Massachusetts law enforcement agencies culminated in Robert Coraine's arrest on gaming charges. He was advised of his Miranda rights and taken to the police station in Salisbury, Massachusetts.

Because he had a mobile home in Seabrook, New Hampshire, several New Hampshire state police officers participated in Coraine's interrogation. One of those officers, Terrance Kinneen, spoke with Coraine in his holding cell for several minutes and did not notice anything unusual about his demeanor. Other than when he mentioned a friend who was dying of cancer, Coraine did not appear particularly anxious, panicked, or distressed. However, the investigating officers found a card in Coraine's wallet that stated:

> The patient Robert L. Coraine is under psychiatric care at the Lynn Hospital out-patient psychiatric unit. He suffers from diabetes, clinical depression, acute anxiety and panic disorders. He is under medications of several mood and mind altering drugs, including Prozac

and Xanax. Do not refuse him his medication! Confinement or restraint could trigger severe and violent instability. Do not incarcerate! Call the phone number on this card immediately.

Although the police did not call the number on the card until several hours later,[1] they did permit Coraine to take a one milligram tablet of Xanax to alleviate any anxiety. The police also provided him with a blanket after he complained of being cold. At that point, it was approximately 1:00 p.m., about an hour after Coraine was first arrested.

Shortly before 2:00 p.m., a member of the West Newbury Police Department, David L'Esperance, removed Coraine from his holding cell and again advised him of his Miranda rights. After allowing him to take a second dose of Xanax, Officer L'Esperance asked Coraine whether the police could search his New Hampshire mobile home. Coraine agreed to the search and confirmed that agreement by signing a consent form that another New Hampshire police officer, Brian Hester, had produced for him to read and review.

Because Coraine never invoked his right to remain silent or his right to consult an attorney, the interrogation continued. Officer Hester asked him a number of questions, such as whether the police would have to unlock his mobile home in order to search it, whether there could be other people in it, and whether there might be firearms there. Coraine stated that he had two firearms there, and when the New Hampshire State Police subsequently carried out a warrantless search of the premises, they did find a shotgun, a Colt .45 pistol, and ammunition. At the time, Coraine was a convicted felon.

On February 11, 1998, a grand jury in the District of New Hampshire indicted Coraine for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the weapons and ammunition that the police had seized from his mobile home, arguing that the officers coerced his consent to the search by promising to let him go in exchange. He also argued that his consent was invalid because he was suffering from an anxiety attack that impaired his ability to think freely at the time.[2]

After a hearing, the district court denied the motion to suppress, finding that (1) although the police told Coraine that he might be home in time for dinner if he were released on bail, they never promised to release him in exchange for his consent to the search; (2) although he had an anxiety disorder, he was not suffering from an anxiety attack when he consented to the search; and (3) in any event, even if he was somewhat upset at times, he had taken Xanax to calm himself down before he had to decide whether to give his consent.

Coraine entered a conditional plea of guilty preserving his right to challenge the search. This appeal followed.

## II.

■ The district court's decision to grant or deny a motion to suppress requires de novo review on appeal. *See United States v. McCarthy*, 77 F.3d 522, 529 (1st Cir.1996). But the district court's findings of fact deserve deference as long as a reasonable view of the evidence will support them. *See United States v. DeMasi*, 40 F.3d 1306, 1311 (1st Cir.1994). The voluntariness of the defendant's consent to a search is a factual determination of this kind, reviewable only for clear error. *See United States v. Salimonu*, 182

---

1. It is worth noting that when the police finally called the number on the card that afternoon, a member of the Psychiatric Group of the North Shore told them that incarcerating Coraine over the weekend would not be a problem despite his condition.

2. Coraine also tried to argue that the police coerced him by refusing to give him medical attention when he asked for it on the way to the police station. But Coraine dropped this argument at the suppression hearing and does not seek to revive it here.

F.3d 63, 70 (1st Cir.1999); *United States v. Forbes*, 181 F.3d 1, 5 (1st Cir.1999).[3]

### III.

■ We now address Coraine's claim that the district court should have suppressed the seized evidence. Generally speaking, the Fourth Amendment requires the police to have a warrant in order to search someone's home. "A warrantless [residential] search violates the Fourth Amendment unless it comes within one of the 'few specifically established and well-delineated exceptions' to the warrant requirement. A consensual search is one such exception." *Forbes*, 181 F.3d at 5 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

■ In order to be effective, a person's consent to a search must be freely and voluntarily given. *See United States v. Schaefer*, 87 F.3d 562, 569 (1st Cir.1996). Voluntariness turns on a number of factors, including the person's "age, education, experience, intelligence, and knowledge of the right to withhold consent." *United States v. Barnett*, 989 F.2d 546, 555 (1st Cir.1993). The court can also consider "whether the consenting party was advised of his or her constitutional rights and whether permission to search was obtained by coercive means or under inherently coercive circumstances." *Id.* (citing *Schneckloth*, 412 U.S. at 226, 93 S.Ct. 2041; *United States v. Twomey*, 884 F.2d 46, 51 (1st Cir.1989)). The totality of circumstances must be taken into account. *See Barnett*, 989 F.2d at 554–55.

■ At the time of his arrest, Coraine was a fifty-year-old high school graduate with some post-secondary education. He had been advised of his Miranda rights on other occasions. In this instance, he actually received his Miranda warnings twice before the police asked for permission to search his mobile home. With these facts in mind, there can be little doubt that Coraine appreciated the significance of giving his consent and that he understood his right to withhold his consent if he chose.

Coraine contends that even if he understood the consequences of letting the police search his mobile home, his consent was invalid because it was obtained by coercion. The gravamen of his claim is that the police forced him to consent by promising to let him go if he agreed to the search and they failed to uncover evidence of gaming at his mobile home. But Officer L'Esperance's testimony at the suppression hearing claimed something very different: although Coraine was told that he *might* be home in time for dinner if he were released on bail, neither L'Esperance nor anyone else *promised* him anything in exchange for his consent.

■ The district court credited Officer L'Esperance's testimony in this regard because of his "demeanor on the stand and his forthright response to questioning." When faced with conflicting testimony and nothing more, the district court's decision to believe one witness instead of another and to draw an appropriate conclusion cannot be considered clearly erroneous. *See United States v. Jones*, 187 F.3d 210, 214 (1st Cir.1999) (observing that "[w]here evaluations of witnesses' credibility are concerned, we are especially deferential to the district court's judgment" in denying a motion to suppress in a criminal case).

Coraine's plea that an anxiety attack induced him to consent is no more availing. Officers Kinneen, L'Esperance, and Hester all testified at the suppression hearing that even if Coraine had a medical condition that made him susceptible to an

---

3. Coraine cites *United States v. Ladell*, 127 F.3d 622, 624 (7th Cir.1997), for the proposition that the voluntariness of a search is a question of law that requires de novo review on appeal. Even if *Ladell* were the law of this circuit, Coraine's argument would remain unavailing. *Ladell* characterizes a person's *authority* to consent as a mixed question of law and fact that is subject to de novo review. The decision makes clear that the *voluntariness* of consent is still a question of fact, reviewed only for clear error. *See id.*

anxiety attack, and even if he became somewhat upset at a point during his interrogation, his speech and demeanor appeared to be normal when they asked for permission to search his mobile home. Although Coraine's psychiatrist, Dr. Yoshiharu Akabane, submitted an affidavit arguing that Coraine's anxiety problems rendered his consent involuntary, another psychiatrist, Dr. Albert Drukteinis, examined him and found the medical evidence to be inconclusive.

After considering the evidence as a whole, the district court ruled that (1) Coraine was susceptible to anxiety or panic attacks; but (2) he was not actually undergoing an anxiety or panic attack when he gave his consent to the search; and (3) in any event, even if he was upset when he was arrested, he was given medication to calm him down before he was asked to consent to a police search of his mobile home.[4] With nothing more in the record than competing testimony, we cannot say that the district court committed clear error in weighing the evidence, making the requisite credibility determinations, and arriving at these factual conclusions. *See United States v. Carty*, 993 F.2d 1005, 1008–09 (1st Cir.1993).

Coraine also argues that it was improper for the police to seize weapons from his home when the primary purpose of their search was to look for evidence of gaming. As Coraine correctly observes, " '[a] consensual search may not exceed the scope of the consent given.' " *United States v. Turner*, 169 F.3d 84, 87 (1st Cir.1999) (quoting *United States v. Rudolph*, 970 F.2d 467, 468 (8th Cir.1992)).

" '[I]f government agents obtain consent ... to search for a stolen television set,' " for example, " 'they must limit their activity to that which is necessary to search for such an item.' " *Turner*, 169 F.3d at 87 (quoting *United States v. Dichiarinte*, 445 F.2d 126, 129 n. 3 (7th Cir.1971)).

Shortly after Coraine consented to the search, the police specifically inquired about any firearms that he might have had in his mobile home.[5] While it is true that the focus of the interrogation may have caused Coraine to believe that the police were looking only for evidence of gambling activity, the officers nevertheless were entitled to seize any weapons that they found in the course of their search because Coraine was a convicted felon who could not lawfully possess a firearm. Considering that evidence of gaming could have been hidden virtually anywhere in the mobile home, it was not unreasonable for the police to look behind a piece of furniture, for example, and to seize the shotgun that Coraine told them they would find there. *Cf. United States v. Kim*, 27 F.3d 947, 956 (3d Cir.1994) ("[W]hen one gives general permission to search for drugs in a confined area, that permission extends to any items within that area that a reasonable person would believe to contain drugs."), *quoted in Turner*, 169 F.3d at 88.

## IV.

### Conclusion

Against this background, the district court correctly upheld the validity of the search and seizure on the basis of Co-

---

4. Coraine does not dispute that his first dose of Xanax effectively calmed him down by the time that the police asked for permission to search his mobile home, nor does he claim that the drug impaired his free will.

5. Although the record is not entirely transparent, it appears that some of the police officers may have known that Coraine was a convicted felon when they asked him if he had any firearms in his mobile home. But Coraine does not contend that it was improper for the

police to ask him this question *after* he had already consented to a search for evidence of gaming. In any event, we cannot say that the police acted unreasonably in this regard because once Coraine gave his consent, it was not surprising that the police asked him what weapons and other potential dangers they might expect to find upon entering his mobile home. Coraine was free to decide whether to answer their questions, and he chose to do so.

raine's consent and properly denied his motion to suppress.

*Affirmed.*