**Sara SANTELLANA, Plaintiff,**

v.

**NUCENTRIX BROADBAND NETWORKS, INC., and DirecTV, Inc., Defendants.**

**No. Civ.A. C–02–079.**

United States District Court, S.D. Texas, Corpus Christi Division.

June 7, 2002.

---

124. Docket Entry 60, at 10.

125. *Id.*

Bryan Powers, Corpus Christi, TX, for plaintiff.

Jeffrey Ray Bragalone, Patrick J. Conroy, McKool Smith, Dallas, TX, Jorge C. Rangel, The Rangel Law Firm, Corpus Christi, TX, William Mike Mills, Valorie Ann Canney Glass, Atlas & Hall, McAllen, TX, M.W. Meredith, Jr., Meredith, Donnell & Abernethy, Corpus Christi, TX, for defendant.

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

JACK, District Judge.

On this day came on to be heard Defendant Nucentrix Broadband Networks, Inc.'s ("Nucentrix") and Defendant DirecTV, Inc.'s ("DirecTV") Motions for Summary Judgment. For the reasons stated herein, the Court GRANTS the motions.

### I. JURISDICTION

Plaintiff Sara Santellana ("Santellana") sues under the Cable Communications Act ("CCA"), 47 U.S.C. § 521 *et seq.* The Court has jurisdiction over this federal question class action suit pursuant to 47 U.S.C. § 551(f) and 28 U.S.C. § 1331.

## II. FACTS

Santellana is a television service subscriber who receives her television programming from Defendant DirecTV with equipment leased from Defendant Nucentrix (Pl.'s Compl. ¶ 5.)

Nucentrix provides wireless broadband services over a terrestrial microwave platform. (Bullis Aff. ¶ 3.) Nucentrix provides its services, including subscription television, to its subscribers using radio frequencies licensed by the Federal Communications Commission ("FCC"). (Bullis Aff. ¶ 5.) Nucentrix broadcasts its television programming at microwave frequencies from antenna systems. (Bullis Aff. ¶ 6.) Subscribers receive the signals using a microwave dish. (Bullis Aff. ¶ 6.) Some customers, for example in apartment buildings, may share one receiving dish. (Bullis Aff. ¶ 8.) Nucentrix's transmission facilities exist entirely on private property and do not occupy public rights-of-way. (Bullis Aff. ¶ 7.) The receiving dishes also exist on private property and do not occupy public rights-of-way. (Bullis Aff. ¶ 8.) The signals from the antenna systems to subscribers' receiving dishes travel an entirely wireless path. (Bullis Aff. ¶ 8.)

DirecTV provides television programming services via satellite to its customers—it is a Direct Broadcast Satellite ("DBS") provider. (Baylor Aff. ¶ 1.) DirecTV provides the programming to its subscribers using radio frequencies via satellite. (Baylor Aff. ¶ 5.) Specifically, DirecTV digitizes, encrypts and uplinks its programming to orbiting satellites from its two Broadcast Centers in California and Colorado. (Baylor Aff. ¶ 7.) The satellites downlink the signals back to subscribers who receive the signals using antennas and DBS receiving systems. (Baylor Aff. ¶¶ 5,

7.) Similar to Nucentrix, DirecTV does not use cable or any other physically "closed" transmission paths to transmit its programming. (Baylor Aff. ¶ 5.)

Santellana alleges that Nucentrix and DirecTV violated the subscriber privacy provision of the CCA, 47 U.S.C. § 551, by disclosing and selling personally identifiable information about subscribers, by failing to give subscribers access to and opportunity to correct such information, and by failing to provide subscribers with clear and conspicuous notice of its disclosure of such information (Pl.'s Compl., ¶¶ 6-9.) As relief, Santellana seeks to have a class certified to recover statutory, actual, and punitive damages as well as attorney fees, costs and injunctive relief.

On April 22, 2002, Nucentrix filed its Motion for Summary Judgment. On May 7, 2002, DirecTV filed its Motion for Summary Judgment. On May 13 and May 28, 2002, Santellana filed her respective Responses in Opposition.[1] The Court now considers the Motions.

## III. DISCUSSION

### A. General Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

---

1. For the sake of clarity and simplicity, the Court will refer to Santellana's opposition to Nucentrix's motion as "Pl.'s Nucentrix Opp." and to her opposition to DirecTV's motion as "Pl.'s DirecTV Opp."

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Judwin Properties, Inc. v. U.S. Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir.1996).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir.1996). If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, the movant must come forward with evidence that establishes "beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original). However, if the nonmovant bears the burden of proof, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548; *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 747 (5th Cir.1989). Once the moving party has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995) (When the movant has satisfied its initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.") Summary judgment is mandated if the nonmovant

fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

 Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Resolution Trust Corp. v. Starkey,* 41 F.3d 1018, 1024 (5th Cir.1995) (*citing Munoz v. International Alliance of Theatrical Stage Employees,* 563 F.2d 205, 207 n. 1 (5th Cir. 1977)). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh the evidence, or draw inferences for the movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, the court must draw all justifiable inferences from the summary judgment evidence in the light most favorable to the nonmovant. *Id.; Pasant v. Jackson Nat'l Life Ins. Co.,* 52 F.3d 94, 96 (5th Cir.1995).

"[T]he papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party." *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir.1987). However, the nonmovant must make more than bare allegations of a claim, for "[t]o permit the pleadings themselves to carry a case to trial when they rest on the invention of counsel would permit the ultimate circumvention of Federal Rule of Civil Procedure 11." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1196 (5th Cir.1986). Neither conclusory allegations nor unsubstantiated assertions will satisfy a non-movant's burden. *See Celotex Corp.,*

477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence" in a summary judgment motion.); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

### B. Cable Communications Act ("CCA")

Congress passed the CCA to provide comprehensive federal regulation of the previous locally and inconsistently governed cable industry. 47 U.S.C. § 521(1); *American Scholastic TV Programming Foundation v. FCC,* 46 F.3d 1173, 1175 (D.C.Cir.1995). Section 551 of the Act protects the privacy of cable subscribers [2] and provides a privately enforceable remedy for violations. *See* 47 U.S.C. §§ 551(a)–(f). The Section 551 notice provision is applicable to "cable operator[s]." 47 U.S.C. § 551(a)(1). Thus, Nucentrix and DirecTV are subject to this provision only if they are cable operators under the Act.

Section 522(5) of the CCA defines a cable operator as:

any person or group of persons (A) who *provides cable service* [3] *over a cable system* and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through

any arrangement, the management and operation of such a *cable system.*

47 U.S.C. § 522(5) (emphasis added). In addition to those within the Section 522(5) definition, "any person who (i) is owned or controlled by, or under common ownership with, a cable operator, and (ii) provides any wire or radio communications service" is also a cable operator. 47 U.S.C. § 551(a)(2)(C).[4] Thus, to be a cable operator under the Section 522(5) definition, the threshold question is whether there is a cable system. If not, the inquiry ends; if so, the next question is whether the entity in question owns or controls the cable system. If the entity does not meet this first definition, it can still be considered a cable operator under the second definition, found in Section 551(a)(2)(C), if it is "owned or controlled by, or under common ownership with" such a cable operator.

#### 1. Section 522(5)

◼ Neither Nucentrix nor DirecTV provide their services over a cable system and, accordingly, are not cable operators under the Section 522(5) definition. The CCA defines a cable system as:

a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community, *but such term does not include ... (B) a*

---

**2.** Section 551 requires disclosures regarding a subscriber's personally identifiable information, limits a cable provider's collection and disclosure of such information, grants subscriber access to such information, and mandates the timing of the destruction of such information. 47 U.S.C. §§ 551(a)–(e).

**3.** It is not disputed that either Nucentrix or DirecTV provides "cable service," so that term is not further defined in this opinion.

**4.** Santellana admitted at a hearing held on April 15, 2002, that Nucentrix could only be a cable operator because of its relationship with DirecTV—that Nucentrix can only fall under the Section 551(a)(2)(C) definition. Although this Court tends to agree with Santellana, in any event the Court will analyze both Defendants under both tests.

*facility that serves subscribers without using any public right-of-way* . . . .

47 U.S.C. § 522(7) (emphasis added). The underlined Section 522(7)(B) has become known as the "private cable exemption." *See, e.g. City of Chicago v. Federal Communications Commission*, 199 F.3d 424, 432 (7th Cir.1999), *cert. denied*, 531 U.S. 825, 121 S.Ct. 71, 148 L.Ed.2d 35 (2000).

In the definitional section of the CCA, cable operators are separately identified from non-cable video programming services, including multichannel multipoint distribution service ("MMDS") and direct broadcast satellite ("DBS") service. *See* 47 U.S.C. § 522(13) (defining a "multichannel video programming distributor" as "a person such as, but not limited to, a cable operator, a multichannel multipoint distribution service, a direct broadcast satellite service, or a television receive-only satellite program distributor, who makes available for purchase, by subscribers or customers, multiple channels of video programming"). This definitional separation, alone and together with the private cable exemption, indicates that those who offer DBS and MMDS services, as well as other wireless or non-cable video programming services, are not cable operators under the CCA.

The FCC, the governmental entity entrusted with the regulatory authority over the CCA, has substantiated this indication. The FCC concluded "that the term cable system as used in the Act encompasses only video delivery systems that employ cable, wire, or other physically closed or shielded transmission paths to provide service to subscribers. . . . Radio services that do not use such closed transmission paths at all · . . ., including direct broadcasting satellites and so-called 'wireless cable' (multipoint distribution service (MDS), instructional fixed television service (ITFS) . . . are therefore not cable systems under the Act)." *In the Matter of Definition of a Cable Television System*, ·5 .F.C.C.Rcd. 7638, ¶ 5 (December 21, 1990). The FCC summarized the above report and order when ruling on another aspect of the "cable system" definition, stating that their interpretation comported with "Congressional intent that alternative video delivery systems such as multipoint distribution service (MDS), multichannel multipoint distribution service (MMDS), [and] instructional television fixed service (ITFS), . . . not be considered cable systems." *Definition of a Cable Television System*, 56 Fed.Reg.1931, ¶ 2 (Jan. 18, 1991); *see also American Scholastic*, 46 F.3d at 1175–82 (holding that under § 533, the CCA did not extend to wireless video programming, citing the Act's "singular focus on the regulation of *cable* systems") (emphasis added). Thus, the FCC explicitly determined that wireless cable services are not "cable systems" under the CCA.[5] As the FCC's determination is reasonable, this Court gives substantial deference to the FCC's interpretation of cable operator under the CCA. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

In addition, even wireless providers who have partially utilized a public right-of-way are considered to fall under the private cable exemption. The Eighth Circuit held that although cables for a satellite master

---

**5.** Santellana has conceded as much. Both in her representations to the Court at the April 15, 2002, hearing as well as in her opposition pleadings to the summary judgment motions, Santellana argues that Nucentrix and DirecTV can only be found to be cable operators under Section 522(5) due to their use of public rights-of-way—not merely by how they transmit television services to subscribers. (Pl.'s Nucentrix Opp. at 1; Pl.'s DirecTV Opp. at 2.)

antenna television ("SMATV") system crossed under a public street to provide service to an apartment complex, the SMATV system did not "use" a public right-of-way to take it outside the private cable exemption. *Guidry Cablevision/Simul Vision Cable System v. City of Ballwin,* 117 F.3d 383, 386 (8th Cir.1997) (interpreting the former, less-broad, private cable exemption). The decision relied heavily upon the FCC's 1990 report and order. *Id.* The Eighth Circuit stated that it did not want to "thwart" the FCC's sound policy of "allowing competition to regulate the development of SMATV so as to encourage the development of satellite transmission of television programming." *Id.* The *Guidry* court noted that Congress "endorsed" this policy in part by enacting the private cable exemption. *Id.*

In the Seventh Circuit's *City of Chicago* case, a non-cable video programming service transmitted its signal on another company's physical lines which were on public rights-of-way. The Seventh Circuit found that because the company at issue paid for use of the lines it utilized, did not control where the lines went, did not control where the signal was sent, did not request most of the lines constructed, and the portion of the lines not being used by the service were available to competitors, the service still fell within the private cable exemption. *City of Chicago,* 199 F.3d at 432.[6]

Here, both Nucentrix and DirecTV are wireless services that do not utilize any public rights-of-way. Nucentrix provides wireless broadband services, including television—it is a MDS, ITFS, and MMDS provider. (Bullis Aff. ¶¶ 3, 5.) The path of the signals from the antenna systems to subscribers' receiving dishes is entirely wireless. (Bullis Aff. ¶ 8.) DirecTV provides television programming services via satellite to its customers—it is a Direct Broadcast Satellite ("DBS") service. (Baylor Aff. ¶¶ 1, 5.) Similar to Nucentrix, DirecTV does not use cable or any other physically "closed" transmission paths to transmit its programming. (Baylor Aff. ¶ 5.) DirecTV does use terrestrial telephone lines to the extent that subscribers who order pay-per-view movies with their remote control have the orders transmitted to DirecTV via the phone line for billing purposes. (Baylor Aff. ¶ 8.) However, DirecTV's programming services, including pay-per-view movies, are entirely wireless and do not use the phone lines. (Baylor Aff. ¶ 8.)

Thus, Nucentrix and DirecTV are not cable operators as they do not provide cable service over a cable system. Rather, they deliver video services through wireless links with subscribers and do not occupy any public rights-of-way. Moreover, neither Nucentrix nor DirecTV have even the minimal "use" of public rights-of-way as those found in the more questionable *Guidry* and *City of Chicago* cases. And the use of the telephone lines by DirecTV does not make it a cable operator, as the telephone lines are not "used" for programming purposes.[7] However, as the

6. This Court finds the reasoning of both the *Guidry* and *City of Chicago* Circuit decisions persuasive. The contrary *dicta* in the two district court cases Santellana cites in support of her position regarding "use" of public rights-of-way is much less persuasive. *See Liberty Cable Co. v. City of New York,* 893 F.Supp. 191, 195 (S.D.N.Y.), *aff'd,* 60 F.3d 961 (2d. Cir.1995), *cert. denied,* 516 U.S.

1171, 116 S.Ct. 1262, 134 L.Ed.2d 210 (1996); *Channel One Sys., Inc. v. Connecticut Dep't of Pub. Util. Control,* 639 F.Supp. 188, 199 (D.Conn.1986).

7. In fact, Santellana, by arguing that DirecTV is a cable operator under the CCA *because* of their utilization of the terrestrial telephone lines, (*see* Pl.'s DirecTV Opp. at 2, 5–6), essentially concedes that the mere transmission of

*Guidry* and *City of Chicago* cases, *supra*, make clear, even if DirecTV did "use" the phone lines, it would still not be a cable operator under the CCA.

### 2. Section 551(a)(C)(2)

As neither Defendant is a cable operator under 522(5), the Court now turns to the 551(a)(C)(2) definition to see if it is applicable. Under that definition, as noted above, "any person who (i) is owned or controlled by, or under common ownership with, a cable operator, and (ii) provides any wire or radio communications service" is also a cable operator. 47 U.S.C. 551(a)(2)(C).

In analyzing this definition, a recent decision of the Fifth Circuit, although examining the 522(5) definition, is instructive. In *City of Austin v. Southwestern Bell Video Services*, 193 F.3d 309, 311 (5th Cir.1999), *cert. denied*, 529 U.S. 1082, 120 S.Ct. 1708, 146 L.Ed.2d 511 (2000), a municipality brought a case against Southwestern Bell Video Service ("SWBV"), a wholly owned subsidiary of SBC Communications ("SBCC"), claiming SWBV was a cable operator under the Section 522(5) definition due to its relationship with another SBCC wholly owned subsidiary of SBCC, Southwestern Bell Telephone Company ("SWBT"). In delivering television programming, SWBV receives satellite and broadcast signals on its own equipment, routes them to SWBT, who in turn sends the signals over its wire and fiber-optic cables to apartment complexes. *Id.*, 193 F.3d at 310. The Fifth Circuit held that "even if the arrangement between SWBV and SWBT is a 'cable system,' that fact alone is insufficient to establish SWBV as a 'cable operator.' SWBV [is] a 'cable

operator' only if it meets one of two tests" under the Section 522(5) definition. *Id.* at 311. The first test is the "ownership" test and the second the "control" test. *Id.* Under the ownership test, Defendants are cable operators if they own "a significant interest" in the cable system. *Id.* Under the control test, Defendants are cable operators if they control "the management and operation" of the cable system. *Id.*[8] Critically, the CCA "does not transform an entity into a cable operator merely because it is an affiliate of another entity which owns a cable system." *Id.* at 312. The Fifth Circuit found that SWBV was not a cable operator under either test, despite the fact that SWBV owned and controlled some components and aspects of the SWBT cable system. *Id.*

Although neither Defendant provides their services over a cable system, the 522(5) ownership and control tests are instructive as they are, essentially, the reverse side of the same coin, with the 522(5) definition on the one side and the 551(a)(2)(C) definition on the other. Under the 522(5) definition, a company is a cable operator if it owns or controls a cable system; under the 551(a)(2)(C) definition, a company owned or controlled by a cable operator is considered one itself.

■ Neither DirecTV nor Nucentrix are cable operators under either definition. Not only do they not own or control a cable service themselves, they are not owned or controlled by an entity that does. (*See* Baylor Aff. ¶ 5; Def. Nucentrix's Mot. for Summ.J., Exh. C.) Santellana has not made any showing or presented any evidence that Nucentrix or DirecTV fall within the Section 551(a)(C)(2) definition.[9]

---

radiowave signals over the air (whether in the microwave frequency or otherwise) is not a "use" of public rights-of-way.

**8.** As noted above, a cable system must exist for either test to apply.

**9.** Santellana attempts to boot strap DirecTV into the Section 551(a)(C)(2) definition based

The CCA notice provision is not applicable to Nucentrix or DirecTV. Therefore, Santellana's claims against Nucentrix and DirecTV cannot succeed and summary judgment in Defendants' favor is mandated.

## IV. CONCLUSION

For the reasons stated herein, this Court GRANTS Nucentrix's and DirecTV's Motions for Summary Judgment and DISMISSES with prejudice the CCA claims against Nucentrix and DirecTV.

on its relationship with Nucentrix (i.e. that DirecTV is a cable operator because it is controlled by Nucentrix, who is a cable operator). (Pl.'s DirecTV Opp. at 7.) Not only is this contrary to Santellana's representations at the April 15, 2002, hearing—where Santellana admitted that *Nucentrix* can only be found a cable operator due to its relationship with DirecTV—it is incorrect. The critical aspect of either the ownership or control test is whether *one* of the parties in the relationship is a cable operator. It is of no event that two companies have a business relationship if neither is a cable operator. As DirecTV is not a cable operator, neither is Nucentrix, regardless of any business relationship with DirecTV.