**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 09-2603

UNITED STATES,

Appellee,

v.

JOSHUA BACH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Lipez and Thompson,
Circuit Judges.

Bruce M. Merrill, P.A., on brief for appellant.
Renée M. Bunker, Assistant U.S. Attorney and Paula D. Silsby,
United States Attorney, on brief for appellee.

August 5, 2010

**Per Curiam**. Defendant-appellant Joshua Bach, who entered a conditional guilty plea to one count of possessing a computer that contained images of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A), files this direct criminal appeal to challenge the district court's denial of his motion to suppress computer files seized from his home during a warrantless search by United States Immigration and Customs Enforcement ("ICE") agents. He disputes the district court's determination that his consent to the search was voluntary.[1] Appellant also contends that the search was invalid because it was begun before he signed the written consent form, contrary to the district court's finding. Thirdly, he argues that even if his consent was voluntarily and timely given, the items seized were beyond the scope of his consent. Finally, appellant contends that the district court did not apply *de novo* review in adopting the Magistrate Judge's Recommended Decision, to which appellant had objected, in violation of 28 U.S.C. § 636(b)(1)(C). Finding none of these claims on appeal to have merit, we summarily affirm.

I. Voluntariness of Consent

Because the ICE agents did not have a warrant to search Bach's home or his computer, they relied upon an exception to the warrant requirement for consensual searches. "In order for consent

---

[1] References to the district court's determinations and findings are references to the magistrate judge's Recommended Decision since the district court adopted it in full.

-2-

to be valid, the Government must prove by a preponderance of the evidence that the consenting party gave it freely and voluntarily. The assessment of whether consent is free and voluntary is a question of fact that requires an examination of the totality of the circumstances surrounding the relevant transaction between law-enforcement authorities and the consenting party. The district court's factual findings relating to the validity of the consent are reviewed for clear error." United States v. Jones, 523 F.3d 31, 37 (1st Cir. 2008).

Appellant argues that his consent was not voluntary under the totality of the circumstances, "given the length of time that Appellant was questioned (90 minutes), in a confined space, by two agents who were openly displaying weapons, and who did not advise him of his right to refuse consent." Examination of each of those factors, and consideration of them in combination, does not establish that the district court clearly erred in its determination that Bach's consent to the computer search was voluntary.

**Length of Time.** According to the district court's findings, approximately 50 minutes passed from the time when the ICE agents first asked Bach if they could search his computer (at 4:30 or 4:35) and when he signed the written consent form (at 5:20 p.m.), and the entire length of time that the police were in Bach's home was just under two hours. It was not clearly erroneous for

the district court to conclude that this duration of time was insufficient to render the consent involuntary, especially where it further found that during the elapsed time, Bach "carefully read a written consent form and asked a number of questions, to which police gave truthful answers, in an attempt to make a fully-informed decision."  Compare United States v. Ivy, 165 F.3d 397, 402 (6th Cir. 1998) (holding that consent to search was involuntary where one and a half hours passed between the officers' initial request for consent and Ivy's ultimate decision to sign the consent form, the "entire incident" took from seven to eight hours, and "the police officers used unlawful threats to secure Ivy's consent").  Nor did the fact that the officers twice asked Bach to read and consider signing the consent form render the eventual consent involuntary.  See Jones, 254 F.3d at 696 (stating that there is "no legal rule that asking more than once for permission to search renders a suspect's consent involuntary, particularly where the suspect's initial response is ambiguous").

**Confined Space & Open Display of Weapons**.  The district court found that "[a]t no time did the agents restrict [Bach's] freedom of movement, refer to their weapons, or tell the defendant he was in custody."  The agents' weapons were "visibly holstered at their belts," but Bach testified that they never unholstered their weapons.  See United States v. Pena, 143 F.3d 1363, 1367 (10th Cir. 1998) (holding that consent was voluntary notwithstanding presence

of four armed officers where "none of the officers unholstered his firearm"); United States v. Baker, 78 F.3d 1241, 1244 (7th Cir. 1996)(holding that consent was voluntary even though the officer had his hand on his gun, where he "never drew it out of his holster").  The mere presence of visible weapons is not enough to render Bach's consent involuntary.

Bach argues that he was in a "confined space" when he consented, which he maintains supports a finding that the consent was not voluntary.  However, consent is most likely to be found to be involuntary where it occurs in a "stationhouse atmosphere," rather than in "familiar surroundings." 4 Wayne R. LaFave, Search and Seizure, § 8.2(b) (4th ed. 2004)(collecting cases).  Here, the fact that Bach was in his own home when he consented to the search weighs in favor of finding that consent was given voluntarily. See United States v. Blakeney, 942 F.2d 1001, 1016 (6th Cir. 1991)(holding that defendant's consent was voluntary and emphasizing that his "consent was not given in a police station, but at his home").

**Notification of Right to Refuse Consent**. The Magistrate-Judge concluded that he was

> satisfied, from the evidence as a whole, including the defendant's background and intelligence, the wording on the form itself, and the many questions he asked agents, to which essentially accurate responses were provided, that he was effectively apprised that he had a right to refuse consent, and that if he did so, agents would be obliged to

-5-

obtain a search warrant to search the computer.

Based upon our review of the transcript of the hearing on the motion to suppress, that finding is supported by "a reasonable view of the evidence," and is not clearly erroneous. United States v. Coraine, 198 F.3d 306, 308 (1st Cir. 1999).

The magistrate judge rejected Bach's testimony that Agent McDonnell had told him that if he did not consent they would "go get a search warrant" (rather than "apply" for a search warrant, as McDonnell testified). The former version of events would lend support to Bach's argument that the consent was involuntary. See 4 Search and Seizure, § 8.2(c). However, the district court's choice to credit Agent McDonnell's testimony, which "comport[ed] with [Agent] Madden's contemporaneous handwritten notes," was not clearly erroneous. See Coraine, 198 F.3d at 310.

II. Timing of Consent

Appellant argues that the consent was invalid because it occurred only after the search had commenced. The district court found that Agent McDonnell "did not begin to run the pre-search software until the defendant finally signed the written consent form." Appellant maintains that "[t]here exists a serious question as to whether that consent was obtained before or after the pre-search software was inserted into Appellant's computer and run."

"In the absence of a reason not to do so, this court defers to the district court's personal observations and evaluation

-6-

of the witnesses' credibility." United States v. Marshall, 348 F.3d 281, 286 (1st Cir. 2003). The magistrate judge explained at length its reasoning for crediting Agent McDonnell's testimony regarding the timing of the consent over Bach's version of events. The record supports the district court's finding in this regard, and appellant has not shown that it is clearly erroneous. See Coraine, 198 F.3d at 308 ("the district court's findings of fact deserve deference so long as a reasonable view of the evidence will support them").

### III. Scope of Consent

Appellant argues that even if he voluntarily signed the written consent form before the computer search began, the evidence seized should have been suppressed because it did not fall within the scope of his consent. Bypassing the question whether appellant waived this argument because he raised it for the first time in his objection to the Recommended Decision of the magistrate judge, we conclude that in any event it is unavailing.

"'A consensual search may not exceed the scope of the consent given.'" United States v. Turner, 169 F.3d 84, 87 (1st Cir. 1999)(citation omitted). In determining the scope of consent given, this court employs an "objective reasonableness" standard, and "look[s] beyond the language of the consent itself, to the overall context, which necessarily encompasses contemporaneous police statements and actions." Id.

Appellant argues that the language of the written consent form authorized the ICE agents to search his computer only for images of children "engaged in adult sexual activities" and that the images on his computer did not fall within that scope. However, Agent McDonnell testified at the evidentiary hearing before the magistrate judge that after Bach received the written consent form, but before he signed it, McDonnell "informed Mr. Bach that the federal statute covering the definition of child pornography included the lascivious display of the genitals of a child under age 18." Bach admitted that McDonnell had "told [him] the definition of child pornography."

Given the undisputed evidence that Agent McDonnell explained to Bach, before he signed the written consent form, the definition of the child pornography which was the object of the search, the items seized (which fit within the stated definition) were within the scope of the consent. See United States v. Brenton-Farley, 607 F.3d 1294, 1332, (11th Cir. 2010)(holding that defendant's consent to the search of his laptop computer encompassed the child pornography evidence because by the time defendant consented to the search "he was well aware of the true subject of the investigation").

IV. De Novo Review by the District Court

Appellant has not identified any legal authority for his contention that the district court's order adopting a magistrate

judge's decision must include an express statement that it has applied *de novo* review (although it is the better practice). Although the district court was "required to review the magistrate judge's decision *de novo*, 28 U.S.C. § 636(b)(1)(C)," Jonco, LLC v. ALI, Inc., 157 F.3d 33, 35 (1st Cir. 1998), it was not required to make "separate findings of fact or issue an opinion setting forth its own reasoning." Id. "The statute authorizes the district court to adopt in whole as well as in part the proposed findings or recommendations of the magistrate judge." Elmendorf Grafica, Inc. v. D.S. America (East), Inc., 48 F.3d 46, 49 (1st Cir. 1995). Despite the district court's failure to expressly state that it had engaged in *de novo* review, appellant has not demonstrated that the district court failed to do so. See Claude v. Peikes, 534 F.3d 801, 801 (2d Cir. 2008)(adopting rule that district court is presumed to have conducted a *de novo* review of a magistrate judge's report and recommendation absent some clear indication otherwise).

Affirmed. See 1st Cir. R. 27.0(c).