NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

RICHARD SCARDIGLI, as Trustee of
the Richard Scardigli Family Trust
Agreement, ERIK D. WATKINS, and
JENNIFER H. WATKINS,

          Appellants,

   v.

MARK C. HOTTON, as Trustee of the
Mark C. Hotton Living Trust, KEVIN
HOTTON, Co-Trustee of the Mark C.
Hotton Living Trust, and all persons or
parties unknown claiming a right, title,
estate, lien, or interest in the real estate
described in the complaint of this
action,

          Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Supreme Court No. S-18422

Superior Court No. 3KN-17-00611 CI

MEMORANDUM OPINION
AND JUDGMENT*

No. 2021 – March 27, 2024

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: Stacey C. Stone and Richard Moses, Holmes Weddle & Barcott, P.C., Anchorage, for Appellants. Notice of Non-participation filed by Appellees Mark C. Hotton and Kevin Hotton.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

\*     Entered under Alaska Appellate Rule 214.

# I.    INTRODUCTION

Two business partners, one based in New York and the other in California, purchased real estate on the Kenai Peninsula.  The New York partner eventually filed for bankruptcy.  During the bankruptcy proceedings, the bankruptcy estate initially pursued claims against the California partner; meanwhile, the California partner sought to buy out the New York partner's interest in the Kenai properties.  The California partner negotiated a settlement agreement in which he was to receive a deed to "[a]ll right, title and interest of the [New York partner], if any, in the real property."  The bankruptcy court approved the settlement agreement without objection.

While preparing to transfer the titles of the Kenai properties, the bankruptcy trustee realized that, contrary to the California partner's representations during settlement negotiations, one of the properties had been titled to the New York partner's living trust, not to the partner individually.  The bankruptcy trustee indicated that he could not convey the living trust's interest in the property.  Over three years following the closure of the bankruptcy case, the California partner once again sought the trust's interest in the Kenai property, bringing suit in superior court.  The court rejected this claim on summary judgment, concluding that it lacked jurisdiction over questions of interpretation, enforcement, or implementation of the bankruptcy settlement agreement.  The California partner appealed.  Agreeing with the superior court, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Scardigli and Hotton's "Alaskan Interests"

Over about five years beginning in 2007, California-based Richard Scardigli and New York-based Mark Hotton purchased properties together.[1] They bought four commercial properties located on the Kenai Peninsula, collectively known as the "Alaskan Interests."

One property, called "College Village," was a small strip mall that housed a sandwich shop and a gym. College Village was deeded to Mark Hotton and Richard Scardigli as individuals. Each partner received a 45% interest, with the remaining 10% interest going to Alaska-based minor partners and property managers Erick and Jennifer Watkins.

The other three properties, collectively called the "S&S Center," are standalone buildings with tenants including state agencies and a senior living center.[2] The S&S Center was deeded to the Mark C. Hotton Living Trust and the Richard Scardigli Family Trust Agreement. Similar to the College Village arrangement, each partner's trust received a 45% interest, and the remaining undivided 10% interest went to Erick Watkins.

---

[1] Initially, the trustees for the Mark C. Hotton Living Trust were represented by an Alaska attorney, who filed nine points on cross-appeal related to partnership law and damages questions that Scardigli did not appeal. But that attorney has since failed to participate in the appeal and could not be contacted. Ultimately, we dismissed the cross-appeal for failure to prosecute. *Scardigli et. al. v. Hotton et. al.*, Nos. S-18422/S-18431 (Alaska Supreme Court Order, Feb. 21, 2023).

[2] Sometimes the S&S Center is described as a subdivision of College Village, including the deeds. But here, as the parties have done throughout the pendency of this case, we refer to the one individually owned building as "College Village" and we refer to the other three buildings owned by the Scardigli and Hotton trusts as "S&S Center." Scardigli, Watkins, and Hotton formed a partnership called S&S Center Partnership which managed, but did not own, the S&S Center properties.

### 2. The Mark C. Hotton Living Trust

In 1997 Mark Hotton formed the Mark C. Hotton Living Trust in New York, where he lived. It is a revocable trust that names Mark Hotton himself as grantor and trustee, plus several other Hottons as successor trustees.

Hotton himself has never held title to the S&S Center, but as the Hotton Living Trust's trustee, Hotton used and controlled the S&S Center as an asset in various ways relevant to this appeal. Hotton loaned money from the S&S Center to Scardigli and others. He also "gifted" funds in the form of equity from the S&S Center to Erick and Jennifer Watkins in 2006 and 2007. In fall 2012 Hotton was indicted in the Southern and Eastern Districts of New York for two separate fraud schemes, including a scheme to defraud investors of a Broadway production. Hotton put up the Alaskan Interests to meet his $3,000,000 bail in the Southern District of New York, signing his consent "Individually and as Trustee of the Mark C. Hotton Living TRUST."

### 3. The bankruptcy and settlement agreement

Hotton had filed for bankruptcy in 2011 in the U.S. Bankruptcy Court for the Eastern District of New York. A bankruptcy trustee was appointed.

In 2013, during bankruptcy proceedings, the bankruptcy trustee initiated an adversarial proceeding against Scardigli to "recover the Alaskan Interests." Prior to declaring bankruptcy, Hotton had attempted to transfer all but 1% of his interests in the Alaskan Interests to his wife, which the bankruptcy trustee divested as wrongful conveyances. The trustee's claims against Scardigli related to a suspicion that Scardigli or the partnerships "facilitated the disputed conveyances to Ms. Hotton as transferees."

Before answering the complaint, Scardigli contacted the bankruptcy trustee with an offer to negotiate buying out Hotton's interests in the Alaskan Interests and settling the trustee's claims. Scardigli represented that Hotton's wife owned Hotton's interest in the Alaskan Interests, and sent the bankruptcy trustee documents apparently indicating that S&S Partnership owned the S&S Center properties.

The parties reached a settlement agreement in which Scardigli would pay the trustee $40,000 in exchange for "settl[ing] the Trustee's Claims to [Hotton's] equitable interest in the Alaskan Interests" and the trustee's agreement "to execute and tender any and all documents . . . necessary to convey whatever interest the estate may have in the Properties to Defendants, Scardigli or Watkins, pursuant to the laws of the State of Alaska." The settlement agreement stipulated that New York law governed, and that the bankruptcy court retained "exclusive jurisdiction" over the agreement, including any dispute over "its enforcement, and the implementation and interpretation of its terms and conditions." In November 2013 the bankruptcy court approved the settlement agreement "settling the Trustee's claims against [Scardigli] and any claimed interest the estate may have in the Alaskan Interests, for $40,000."

### 4. Post-settlement title transfer

About two months later in January 2014, the bankruptcy trustee, Scardigli, Watkins, and the Alaskan Interests' title manager began corresponding about transfer of the titles to the Alaskan Interests. The title manager advised that any transfer in title to the S&S Center would be from the Hotton Living Trust, not Hotton individually. The bankruptcy trustee responded that he could not deed anything currently titled to the Hotton Living Trust, because his "client [wa]s not the Trustee of the Mark C. Hotton Living Trust." The title manager noted that Hotton's individual interest was only in College Village, and that "this will leave the Mark C. Hotton Living Trust with a vested ownership" in the S&S Center. The bankruptcy trustee thereafter sent a deed to Scardigli, quitclaiming "all right, title and interest of [Hotton], if any" in College Village alone, with no mention of the S&S Center properties. Then, in February 2017, the bankruptcy trustee prepared his final account report, and served Scardigli with notice of the final report and hearing on the report. Without objection, the bankruptcy court approved the final report, made a final distribution, and closed Hotton's bankruptcy case in February 2017.

More than three years later, in 2020, Scardigli contacted the bankruptcy trustee again, seeking title to the S&S Center. The bankruptcy trustee responded that "the Trustee fulfilled his obligations under the Order approving the settlement by executing all documents . . . to surrender the *estate's interest* in the properties owned by [the] S&S Center and College Village." (emphasis in original) The bankruptcy trustee stated that "the [Hotton Living] Trust was not property of the estate and that the [Bankruptcy] Trustee was not the trustee of the [Hotton Living] Trust." And the bankruptcy trustee reiterated that the trustee's commitment under the settlement agreement was "to tender any and all documents to the S&S Center and College Village (or Watkins and Scardigli) which may be necessary to convey any and all of the *estate's interest* in the properties owned by the S&S Center and College Village." (emphasis in original).

The bankruptcy trustee reminded Scardigli that any litigation of these issues "may only be brought in the Bankruptcy Court" but nevertheless that an action "would be completely without merit, barred by the applicable statute of limitations, and sanctionable."

### B. Proceedings

Scardigli sued Hotton in Alaska, alleging that he was entitled to quiet title of the S&S Center. As relevant to this appeal, Hotton eventually moved for summary judgment, asking the court to confirm that the Hotton Living Trust has a 45% interest in the S&S Center. Scardigli opposed and cross-moved for summary judgment, asking the court to confirm the plaintiffs' 100% interest in the S&S Center. Following oral argument, the superior court issued a request for more briefing. Citing the settlement agreement's exclusive forum selection clause, the court "invite[d] the parties to explain what efforts they made to bring the missing S&S Center back to the [bankruptcy] Court" and "any additional authority . . . on why this court does or does not have authority to take action on this settlement agreement."

Scardigli responded that the settlement agreement's "jurisdictional provisions may seem to restrict this court at first blush" but that the court had "ample authority" to quiet title under legal theories not related to the settlement. In the alternative Scardigli cited Article IV, Section 1 of the United States Constitution[3] to urge that the court should give "full faith and credit" to the bankruptcy court's determination "to effectuate the clearly-contemplated transfer of the 45% interest in [the] S&S Center to Plaintiffs." And Scardigli also cited our opinion in *John v. Baker*[4] to support "the existence of non-exclusive 'concurrent jurisdiction,' " and the Alaska quiet title statute[5] to suggest the court had "inherent authority to determine title under AS 09.45.010."

In a May 2021 order, the court determined that it lacked jurisdiction over questions related to the bankruptcy court settlement agreement, while also granting Hotton's summary judgment motion and denying Scardigli's cross-motion. In particular, the court concluded that "the powers and jurisdiction of the bankruptcy court or the bankruptcy trustee" and "[w]hether a bankruptcy trustee accurately understands their authority" were questions for the bankruptcy court, not the superior court. But in spite of the court's conclusion that it lacked jurisdiction over such questions, the court also indicated that "the bankruptcy trustee effectively conveyed the interests he had the authority to convey," and concluded that the S&S Center was currently owned by "the

---

[3]     U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.").

[4]     982 P.2d 738, 760 (Alaska 1999). *John v. Baker* involved concurrent jurisdiction between state and tribal courts in Indian child custody cases. *See id.*

[5]     The quiet title statute simply states: "A person in possession of real property, or a tenant of that person, may bring an action against another who claims an adverse estate or interest in the property for the purpose of determining the claim." AS 09.45.010.

Richard Scardigli Family Trust (45%), the Mark C. Hotton Living Trust (45%), and Mr. and Ms. Watkins (10%)."

Scardigli appeals.

## III. STANDARD OF REVIEW

We review rulings on motions for summary judgment and questions of law de novo, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

## IV. DISCUSSION

As an initial matter, we must begin by correcting some of Scardigli's representations to the superior court and to us. Scardigli has represented that the bankruptcy court ordered that the Hotton Living Trust was void, that the bankruptcy trustee then conveyed the interests that had been the Trust's to Scardigli through the bankruptcy settlement agreement, and "therefore it is proper for title to be quieted." We find no support for this position in the record.

The deeds relevant to the involved properties, the terms of the settlement agreement, statements and communications of the bankruptcy trustee, and the record of bankruptcy court orders provide no support for Scardigli's assertion. The deed transferring property to Scardigli does not convey the S&S Center. It lists only the College Village subdivision property, not the S&S Center. This is consistent with the bankruptcy trustee's stated understanding that the Hotton Living Trust held title to the S&S Center and that the trustee had no authority to convey the Hotton Living Trust's property. And regardless of Scardigli's claims to the contrary, the bankruptcy court never ordered that the Hotton Living Trust was void. Indeed, the record indicates Scardigli never broached this issue with the bankruptcy court. And the bankruptcy court never stated or concluded that the bankruptcy trustee validly conveyed the Hotton

---

[6]     *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 657 (Alaska 2011) (quoting *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 129 P.3d 994, 998 (Alaska 2008)).

Living Trust's title.  Thus we begin with the understanding, based on the record before us, that Scardigli's arguments that the Hotton Living Trust was void, that the bankruptcy trustee had authority to convey the Trust's interests in the S&S Center, and that those interests were conveyed to Scardigli under the settlement agreement have not been asserted before the bankruptcy court, and no court — as relevant to this appeal — has issued orders to that effect.

Given that these arguments have not previously been brought before the bankruptcy court, we turn initially to the issue of where the pertinent questions should properly be litigated and decided.  In a bankruptcy case, Alaska law generally holds that "the bankruptcy court is the proper forum to resolve disputes about property of the estate."[7]  While normally the superior court has concurrent jurisdiction over proceedings "arising under" or "related to" bankruptcy proceedings,[8] here the settlement agreement between Scardigli and the bankruptcy estate expressly designated and retained the bankruptcy court as the exclusive forum for resolving issues of interpreting, enforcing, or implementing the settlement agreement.

Scardigli indicates that the superior court has jurisdiction here because "property interests are a matter of Alaska law, [so] the superior court erred when it refused to exercise such dominion by the court, and in turn, honor the bankruptcy settlement."[9]  Scardigli somewhat misleadingly portrays this as an issue of giving a

---

[7]     *See Brown v. Knowles*, 307 P.3d 915, 923-24 (Alaska 2013) (observing comprehensive nature of bankruptcy proceedings).

[8]     28 U.S.C. § 1334(b); *Triem v. Kake Tribal Corp.*, 513 P.3d 994, 997 (Alaska 2022) (citing *Jonco LLC v. ALI, Inc.*, 157 F.3d 33, 35 (1st Cir. 1998)) (bankruptcy court retaining jurisdiction does not prevent state court from exercising concurrent jurisdiction).

[9]     Scardigli correctly observes that state law defines a debtor's interest in a given property.  *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").  But his contention misses the other important

bankruptcy judgment "full faith and credit," arguing that the "Trustee sold Hotton's entire interest in both properties to Scardigli and Watkins, which was a valid conveyance that needs to be properly recorded in Alaska's property records."[10] He claims that "the superior court refused to honor the bankruptcy order" and that this was "both an error and an egregious constitutional violation."

Scardigli is correct that the superior court can quiet title, but in this matter, Scardigli has asked the superior court and us to do more. Indeed, Scardigli would have the superior court either accept his mischaracterization of the record before the bankruptcy court, or resolve the questions of how and whether Hotton Living Trust's interests in the S&S Center were conveyed in the bankruptcy settlement agreement, in order to quiet title. We do not accept Scardigli's account of the record. And the challenges he brings in the alternative are squarely within the exclusive jurisdiction of the bankruptcy court.

To the extent there is a genuine dispute as to whether the bankruptcy trustee could or should have conveyed the Hotton Living Trust's title to the S&S Center, the parties' settlement agreement explicitly designates the bankruptcy court as holding "exclusive jurisdiction" over the agreement, "its enforcement, and the implementation and interpretation of its terms." Generally, if parties agree on a forum selection in a contract, that forum selection is presumptively valid and enforceable unless the party resisting enforcement shows that (1) the forum selection clause was obtained by fraud

---

aspect of the debtor's estate that it is "comprised of 'all legal or equitable interests of the debtor in property as of the commencement of the case.' " *NTA, LLC v. Concourse Holding Co., LLC (In re NTA, LLC)*, 380 F.3d 523, 527–28 (1st Cir. 2004) (quoting 11 U.S.C. § 541(a)(1)). And "[a] bankruptcy estate cannot succeed to a greater interest in property than the debtor held prior to bankruptcy." *Id*. at 528.

[10]    In superior court Scardigli argued, similarly, that "the bankruptcy court has already decided what should happen" to the Hotton Living Trust's interest when it approved the settlement agreement.

or overreaching; (2) enforcement would violate a strong public policy of the forum; or (3) enforcement under the circumstances would be so seriously inconvenient as to be unreasonable.[11] There is no reason not to apply this logic to bankruptcy courts as well. Here, the issues posed seem to be within the institutional competency of the bankruptcy court as they concern "the administration of the estate" and "counterclaims by the estate against persons filing claims against the estate."[12] Scardigli has set forth no persuasive argument that any of the exceptions to enforcement of the forum selection clause apply. Moreover, the bankruptcy court's order approving the settlement terms cements that court's exclusive jurisdiction over questions of interpreting, implementing, and enforcing the settlement agreement. Alaska's courts are simply not the proper forum for addressing Scardigli's claims.[13]

We note that during the litigation before the superior court, the court directly asked Scardigli to detail his efforts to bring the questions related to the S&S Center before the bankruptcy court, and if he had none to report, to explain why he failed to do so. But Scardigli never squarely answered the superior court's question. Instead, Scardigli responded that the trustee communicated to him that "it would no longer be appropriate for Plaintiffs to bring this issue back before the bankruptcy court." But the bankruptcy trustee's communication actually asserts the opposite: "We will caution that any such action [to fulfill the terms of the stipulated settlement] may only be brought in the Bankruptcy Court." Given the lack of prior objection before the bankruptcy court and the closure of the bankruptcy case years prior, the trustee further warned that such an action would be meritless, time-barred, and sanctionable.

---

[11]    *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 15-17 (1972).

[12]    *See* 28 U.S.C. § 157(b)(2)(A), (C).

[13]    Scardigli also contends that we should adopt the rule that assets of a revocable living trust belong to the trust's creator or in the alternative that we should "pierce the trust's veil" asserting the trust was an "alter ego" of Hotton. Given that we have determined that we do not have jurisdiction here, we do not reach those arguments.

Regardless, Scardigli's failure to seek relief at any point before the bankruptcy court does not somehow convey jurisdiction to the superior court.[14]

We conclude that the superior court was correct to recognize its lack of jurisdiction over questions of interpreting, implementing, and enforcing the bankruptcy settlement agreement, including questions related to the authority of the bankruptcy trustee to transfer property pursuant to the settlement agreement. The superior court was also correct in refusing to "address remedies which could have been requested in the [bankruptcy court]."

While affirming the superior court's conclusion that it lacked jurisdiction over questions about whether or how the Hotton Living Trust's interests in the S&S Center should have been transferred under the bankruptcy settlement agreement at issue, we note that the court nevertheless went further in making findings regarding the bankruptcy trustee's scope of authority and the actual ownership of the S&S Center. Because, as the superior court determined, the bankruptcy court maintains exclusive jurisdiction over those questions, the court's additional findings on those issues are vacated.

## V. CONCLUSION

We AFFIRM the superior court's conclusion that it lacked jurisdiction over questions related to the interpretation, implementation, and enforcement of Scardigli's settlement agreement with the bankruptcy estate. We VACATE any findings beyond those necessary for the court to determine its lack of jurisdiction.

---

[14] The superior court noted that Scardigli may not be entirely without relief, agreeing with him that "revocable trusts cannot be used to shield [against] creditors" and observing that he may be able to reach the Trust's assets upon obtaining a judgment against Hotton.